IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| PAUL J. HENRY III, | : | Civil No. 3:24-cv-301 |
| | : | |
| Plaintiff | : | (Judge Mariani) |
| | : | |
| v. | : | |
| | : | |
| PA DEP'T OF CORR., *et al.*, | : | |
| | : | |
| Defendants | : | |

## MEMORANDUM

Plaintiff Paul Henry ("Henry"), an inmate housed, at all relevant times, at the State Correctional Institution, Benner Township, Pennsylvania ("SCI-Benner Township"), commenced this *pro se* civil rights action pursuant to 42 U.S.C. § 1983. (Doc. 1). The matter is proceeding via an amended complaint. (Doc. 16). Named as Defendants are: (1) the Pennsylvania Department of Corrections ("DOC"); (2) Laurel Harry, Secretary of the DOC and former Superintendent of the State Correctional Institution, Camp-Hill, Pennsylvania ("SCI-Camp Hill"); (3) George M. Little, former Secretary of the DOC; (4) Bradley Booher, Superintendent of SCI-Benner Township; (5) Morris Houser, former Superintendent of SCI-Benner Township; (6) Holly Quist, Superintendent's Assistant at SCI-Benner Township; (7) Curtis Grice, Deputy Warden at SCI-Benner Township and former Major at SCI-Benner Township; (8) Robert Williamson, Central Regional Office and former Captain at SCI-Benner Township; (9) Captain Bookheimer, Security at SCI-Benner Township; (10) Lieutenant Kauffman, Security at SCI-Benner Township; (11) J. Schneck,

Hearing Examiner at the Central Office; (12) Zackary J. Moslak, Chief Hearing Examiner at

the Central Regional Office; (13) Stewart Boone, Mailroom Supervisor at the State

Correctional Institution, Rockview, Pennsylvania ("SCI-Rockview"); (14) Jacqueline Burd,

Grievance Coordinator at SCI-Benner Township; (15) Nadine Ramirez, Corrections

Principle at SCI-Benner Township; (16) Hannah Bingman-Forskey, Librarian at SCI-Benner

Township; and (17) T. Heist, Grievance Coordinator at SCI-Camp Hill.

Presently pending before the Court is Defendants' motion to dismiss pursuant to

Federal Rule of Civil Procedure 12(b)(6).  (Doc. 22).  For the reasons set forth below, the

motion will be granted in part and denied in part.

## I.    Allegations of the Amended Complaint

Henry's sprawling amended complaint consists of more than 100 handwritten pages

and names seventeen Defendants.  (Doc. 16).  The gravamen of Henry's amended

complaint is that staff members rejected and confiscated a box of his legal mail, which

purportedly tested positive for synthetic cannabinoids, but also contained photographs

relevant to his criminal conviction, which he needed for the appeal of his state court

sentence.  He thus alleges that Defendants interfered with his First Amendment right of

access to the courts.  The amended complaint also sets forth several claims associated with

his denial of access to the courts claim; namely, that Defendants violated his Fourteenth

Amendment right to due process and Eighth Amendment right to be free of cruel and

unusual punishment, and that Defendants engaged in improper employment practices and denied him the ability to pursue the redress of grievances. The allegations are as follows.

On February 16, 2022, Henry alleges that his criminal defense attorney mailed him two boxes of evidence pertaining to his criminal trial. (Doc. 16, p. 16 ¶ 1). When the mail arrived at the facility, Henry alleges that Defendant Boone, the SCI-Rockview mailroom supervisor, accepted one box and rejected the other box.[1] (*Id.* at p. 16 ¶¶ 2-3). On March 1, 2022, Henry filed Grievance Number 970370 contesting the rejection of the second box for failure to provide him a reason for the rejection. (*Id.* at p. 17 ¶ 5). Defendant Boone allegedly responded that the box was rejected because the attorney control number on each box was different. (*Id.*). Defendant Boone did not provide a reason for his purported failure to provide Henry with notice of the rejection. (*Id.*). Henry asserts that he has photographs of the boxes before they were sent, showing that they have the same attorney control number. (*Id.*). Henry thus alleges that Defendant Boone lied about the rejection reason. (*Id.*).

Henry asserts that his criminal defense attorney resent the rejected box to SCI-Benner Township. (*Id.* at p. 16 ¶ 4). On March 3, 2022, Henry was called to the legal mailroom to accept the second box. (*Id.* at pp. 17-18 ¶ 6). When Henry arrived at the mailroom, he discovered that the box was already opened, and he was informed that

---

[1]    Henry asserts that SCI-Benner Township does not have its own mailroom, and all inmate mail is sent to the SCI-Rockview mailroom before being transferred to inmates at SCI-Benner Township. (Doc. 26, p. 6).

3

security tested the box, and it tested positive for synthetic cannabinoids. (*Id.*). The box was confiscated, and Henry was issued a confiscated items receipt. (*Id.*). On March 10, 2022, Defendant Kauffman issued misconduct number D692616 against Henry charging him with possession of a dangerous or controlled substance and unauthorized use of the mail, and Henry was placed in the restricted housing unit ("RHU"). (*Id.* at p. 18 ¶ 7; *Id.* at p. 20 ¶¶ 1-2). A misconduct hearing convened on March 15, 2022, before Defendant-Hearing Examiner Schneck. (*Id.* at p. 21 ¶ 2). Defendant Schneck dismissed the charges against Henry without prejudice. (*Id.*). Defendant Schneck purportedly found "no evidence" of Henry's guilt after reading Kauffman's report and weighing the evidence. (*Id.*).

On March 15, 2022, Defendant Kauffman allegedly resubmitted the misconduct, designated as number D693631, setting forth the same charges against Henry. (*Id.* at p. 20 ¶ 3). Defendant Kauffman attached a report indicating that the Security Processing Center performed testing that confirmed the presence of synthetic cannabinoids and that the box was sent to the Bureau of Investigations and Intelligence for further testing. (*Id.*). Henry asserts that after Kauffman resubmitted the second, similar misconduct on March 15, 2022, Schneck held an *ex parte* hearing on March 16, 2022. (*Id.* at p. 21 ¶ 3; *Id.* at p. 22 ¶ 4). During this *ex parte* hearing, Defendant Kauffman allegedly testified about a phone call between Henry and his mother. (*Id.*). During that phone call, Henry's mother allegedly said she knew "that [the box] was fully loaded with pages[,]"—slang used for the introduction of drugs into institutions. (*Id.*). Henry maintains his innocence and alleges that Defendant

4

Kauffman lied about the context of this phone call. (*Id.* at p. 23 ¶ 4(b)). Defendant Schneck ultimately found Henry guilty of the misconduct. (*Id.* at p. 25 ¶ 5). Henry claims that Defendant Schneck denied him due process, including the right to present video evidence and witnesses, and the right to confront adverse witnesses. (*Id.*). Henry appealed Schneck's decision to the Program Review Committee ("PRC"), which consisted of Defendants, Booher, Grice, and Williamson. (*Id.* at p. 25 ¶ 5(c)(1)). The PRC upheld Schneck's decision, citing that Henry's witnesses were improper. (*Id.*). Henry asserts that the PRC failed to address his request for video footage of the mailroom. (*Id.*). Henry then appealed to the Superintendent, Defendant Houser, who upheld the PRC's decision. (*Id.* at pp. 25-26 ¶ (c)(2)). He next appealed to the Chief Hearing Examiner, Defendant Moslak, who upheld the prior decisions. (*Id.* p. 26 ¶ 3; *Id.* at p. 27).

In his next claim, Henry alleges that Defendants Williamson, Grice, Ramirez, Bingman-Forshey, Quist, and Burd denied him access to the courts. (*Id.* at p. 32). Henry states that he was placed in the RHU for 75 days—from March 10, 2022 through May, 24, 2022. (*Id.* at p. 33 ¶ 2(a)). During this time, he claims that Defendant Williamson denied him access to his legal property when Williams stated that he was only allowed one box of legal materials in his cell. (*Id.*). Henry also claims that Williamson did not allow him to make copies of exhibits that he intended to file with his legal brief, stating that there were too many pages to be copied. (*Id.* at p. 34 ¶ 3). Henry then asked Defendant Grice to make copies of the exhibits and informed him that he had an upcoming court-ordered

deadline. (*Id.*). Defendant Grice allegedly told Henry that he could not make the copies due to the number of pages, and that the courts would be flexible with deadlines. (*Id.*). Henry also asserts that Defendants Ramirez and Bingman-Forshey would not allow him to make copies with a cash slip but required him to provide a "Venda-copy card." (*Id.* at p. 35 ¶ (3)(c)). Henry maintains that he was not allowed to have his "Venda-copy card" on his person while in the RHU; it was stored with his legal property. (*Id.*). Henry further alleges that Defendants Quist and Burd failed to respond to requests he had made while in the RHU for extension of deadlines and requests for the status of outstanding grievances. (*Id.* at p. 35).

Henry next alleges that the DOC, Kauffman, Bookheimer, Little, Harry, Booher, and House denied him access to the courts by confiscating the second box of legal mail, which he claims was vital to his Post-Conviction Relief Act ("PCRA") petition challenging his conviction and sentence. (*Id.* at pp. 39-40). Henry asserts that he made multiple requests to Kauffman and Bookheimer, demanding the return of the photographs contained in the box, or copies thereof, but never received a response. (*Id.* at p. 40 ¶ 2). Henry also avers that he wrote to then-Secretary Little and Secretary Harry, requesting the return of the photographs or copies thereof. (*Id.* at pp. 41-42). He claims neither responded. (*Id.*)

Henry maintains that he has been harmed as a result of the DOC's employment practices. (*Id*. at p. 47). He lodges this claim against the DOC, Little, Harry, Booher, Houser, Boone, Ramirez, and Heist. (*Id.*). In describing this claim, Henry alleges that he

first lost his legal mail at SCI-Camp Hill in June of 2021. (*Id.* at p. 49). Because this mail

was allegedly lost, Henry's criminal attorney attempted to remail the evidence in the two

boxes he sent to SCI-Rockview. (*Id.* at p. 51). Henry also claims that Boone previously

rejected his mail without notifying him of the rejections. (*Id.* at pp. 49-54). From June 2021

to October 2023, Henry asserts that he either lost mail or mail had been improperly

confiscated. (*Id.* at pp. 54-58). He also asserts that Defendant Ramirez improperly

removed an envelope from the law library containing a portion of his PCRA petition. (*Id.* at

pp. 58-59). Henry alleges that Ramirez then lost the envelope containing part of his PCRA

petition. (*Id.* at p. 59).

Henry next brings a claim against the DOC, Quist, Burd, Grice, Houser, Booher,

Williamson, Heist, Ramirez, and Boone, alleging that the prison grievance system itself

interferes with his right to seek redress of grievances. (*Id.* at pp. 62-63). He asserts that he

had several grievances pending when he was placed in the RHU and the security

department confiscated these grievances. (*Id.* at pp. 63, 82). Henry believes that he should

not be required to pay for copies of all prior grievances and appeals at each level to exhaust

his administrative relief, and that he should not have to provide copies of supporting

documentation. (*Id.* at pp. 63-68). In support, he avers that the DOC already has the

originals and is engaging in extortion by requiring inmates to pay for extra copies. (*Id.*). He

also accuses the DOC of encouraging staff to interfere with grievances by lying, avoiding

filing a response, providing illegible signatures to avoid providing staff names, and delaying

grievances in order to deny them as untimely.  (*Id.* at pp. 68-76).  Henry also asserts that

Defendants Quist, Grice, Bookheimer, and Williamson intimidate and threaten grievance

filers.  (*Id.* at pp. 77-80).

Finally, Henry brings a cruel and unusual punishment claim against the DOC, Boone,

Booher, Quist, Harry, Ramirez, Bingman-Forshey, Grice, and Bookheimer, asserting they

denied him access to courts by interfering with his legal mail and using Smart

Communications to delay his mail.  (*Id.* at pp. 82-86).  He also asserts that he has lost legal

mail and has been denied access to stored legal property.  (*Id.* at pp. 86-89).  He complains

of lack of access to the law library and lack of refunds for printing costs.  (*Id.* at pp. 90-91).

## II.    Legal Standard

A complaint must be dismissed under Federal Rule of Civil Procedure 12(b)(6), if it

does not allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl.*

*Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007).  The

plaintiff must aver "factual content that allows the court to draw the reasonable inference

that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 129

S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009).

"Though a complaint 'does not need detailed factual allegations, . . . a formulaic

recitation of the elements of a cause of action will not do.'" *DelRio-Mocci v. Connolly Prop.*

*Inc.*, 672 F.3d 241, 245 (3d Cir. 2012) (citing *Twombly*, 550 U.S. at 555).  In other words,

"[f]actual allegations must be enough to raise a right to relief above the speculative level."

*Covington v. Int'l Ass'n of Approved Basketball Officials*, 710 F.3d 114, 118 (3d Cir. 2013)

(internal citations and quotation marks omitted).  A court "take[s] as true all the factual

allegations in the Complaint and the reasonable inferences that can be drawn from those

facts, but . . . disregard[s] legal conclusions and threadbare recitals of the elements of a

cause of action, supported by mere conclusory statements." *Ethypharm S.A. France v.

Abbott Laboratories*, 707 F.3d 223, 231, n.14 (3d Cir. 2013) (internal citations and quotation

marks omitted).

> *Twombly* and *Iqbal* require [a district court] to take the following three steps to
> determine the sufficiency of a complaint:  First, the court must take note of the
> elements a plaintiff must plead to state a claim.  Second, the court should
> identify allegations that, because they are no more than conclusions, are not
> entitled to the assumption of truth.  Finally, where there are well-pleaded
> factual allegations, a court should assume their veracity and then determine
> whether they plausibly give rise to an entitlement for relief.

*Connelly v. Steel Valley Sch. Dist.*, 706 F.3d 209, 212 (3d Cir. 2013).

"[W]here the well-pleaded facts do not permit the court to infer more than the mere

possibility of misconduct, the complaint has alleged – but it has not show[n] – that the

pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (internal citations and quotation marks

omitted).  This "plausibility" determination will be a "context-specific task that requires the

reviewing court to draw on its judicial experience and common sense." *Id.*

However, even "if a complaint is subject to Rule 12(b)(6) dismissal, a district court

must permit a curative amendment unless such an amendment would be inequitable or

futile." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 245 (3d Cir. 2008).

> [E]ven when plaintiff does not seek leave to amend his complaint after a
> defendant moves to dismiss it, unless the district court finds that amendment
> would be inequitable or futile, the court must inform the plaintiff that he or she
> has leave to amend the complaint within a set period of time.

*Id.*

## III.    **Discussion**

### A.    The DOC is not a Person under Section 1983

Henry has named the Pennsylvania Department of Corrections as a Defendant in

this action. (Doc. 16, pp. 2-3). However, the Department of Corrections is not amenable to

suit because it is not a person as required for purposes of § 1983, and it is entitled to

immunity under the Eleventh Amendment. *See Will v. Michigan Dep't of State Police*, 491

U.S. 58, 71 (1989) (holding that a state may not be sued in federal court pursuant to § 1983

and is not a "person" for purposes of that provision). Eleventh Amendment immunity

prevents Henry from suing the Department of Corrections as a matter of law. "Because the

Commonwealth of Pennsylvania's Department of Corrections is a part of the executive

department of the Commonwealth, *see* Pa. Stat. Ann., tit. 71, § 61, it shares in the

Commonwealth's Eleventh Amendment immunity." *Lavia v. Pennsylvania Dep't of Corr.*,

224 F.3d 190, 195 (3d Cir. 2000). Pennsylvania has not waived this immunity. 42 Pa.

Cons. Stat. § 8521(b). Accordingly, the Department of Corrections is not subject to suit and

will be dismissed.

## B.    Access to Courts Claim

"Under the First and Fourteenth Amendments, prisoners retain a right of access to the courts." *Monroe v. Beard*, 536 F.3d 198, 205 (3d Cir. 2008). "Where prisoners assert that defendants' actions have inhibited their opportunity to present a past legal claim, they must show (1) that they suffered an 'actual injury'—that they lost a chance to pursue a 'nonfrivolous' or 'arguable' underlying claim; and (2) that they have no other 'remedy that may be awarded as recompense' for the lost claim other than in the present denial of access suit." *Id. (*quoting *Christopher v. Harbury*, 536 U.S. 403, 415 (2002)). "[T]he underlying cause of action, ... is an element that must be described in the complaint." *Christopher*, 536 U.S. at 415. Also, since there is no "abstract, freestanding right to a law library or legal assistance, an inmate cannot establish relevant actual injury simply by establishing that his prison's law library or legal assistance program is subpar in some theoretical sense." *Lewis v. Casey*, 518 U.S. 343, 351 (1996). Regarding the lost remedy, a prisoner must explain how his claims "may no longer be pursued as a result of defendant's actions." *Monroe*, 536 F.3d at 206 n.9.

Henry alleges that: (1) Boone deprived him of access to courts when he rejected a box of forensic photographs after it allegedly tested positive for drugs; (2) Williamson kept a portion of Henry's legal materials in storage, which hindered his ability to file a court-ordered brief in civil action 3:21-cv-247; (3) Williamson and Grice refused Henry's request to make copies of exhibits of in support of his legal brief; (4) Ramirez and Bingman-Forshey did not

permit him to make copies using a cash slip, but instead required a "Venda-copy Card"; (5)

he was denied access to items in storage; and (5) Kauffman, Bookheimer, Little, Harry,

Booher, and Houser confiscated or did not respond to his requests for the return of the box

containing forensic photographs. (Doc. 16, pp. 32-36, 39-43).

In sum, Henry alleges that Defendants denied him access to his stored legal

property, denied him access to copies, rejected and confiscated a box of legal materials

vital to his criminal case, and that this denial of access affected his pending litigation by

impairing his ability to file a legal brief. Based on the pleadings, he adequately states a

denial of access to the courts claim. Accordingly, dismissal would be inappropriate at this

time.

    C.   <u>Due Process Claim</u>

The Fourteenth Amendment of the United States Constitution provides in pertinent

part that: "No State shall…deprive any person of life, liberty, or property, without due

process of law." U.S. CONST. amend. XIV. The United States Supreme Court has

mandated a two-part analysis of Fourteenth Amendment procedural due process claims.

*See Ingraham v. Wright*, 430 U.S. 651, 672 (1977). First, the reviewing court must

determine "whether the asserted individual interests are encompassed within

the…protection of 'life, liberty or property.'" *Id.* If a protected interest is implicated, the court

must "decide what procedures constitute 'due process of law.'" *Id.* If no protected interest

is implicated, however, then "it is unnecessary to analyze what procedures were followed

when an alleged deprivation of an interest occurred." *Harris v. Hines*, 2017 WL 4119743, at

*5 (M.D. Pa. Sept. 18, 2017).

"To state a claim under § 1983 for deprivation of procedural due process rights, a

plaintiff must allege that (1) he was deprived of an individual interest that is encompassed

within the Fourteenth Amendment's protection of 'life, liberty, or property,' and (2) the

procedures available to him did not provide 'due process of law.'" *Hill v. Borough of

Kutztown*, 455 F.3d 225, 233-34 (3d Cir. 2006) (citing *Alvin v. Suzuki*, 227 F.3d 107, 116 (3d

Cir. 2000)).

Defendants move to dismiss Henry's claim for violating his due process rights under

the Fourteenth Amendment. (Doc. 23, pp. 21-23). In support of their motion to dismiss,

Defendants argue that Henry does not state a claim for violating his due process rights

because he was afforded a hearing on the misconduct, and the "mere denial of a grievance

(or appeal) does not trigger a due process claim." (*Id.* at p. 23 (citation omitted)).

In response, Henry argues that he was not permitted to present any evidence or

witnesses at his misconduct hearing, and that a second *ex parte* hearing was held, in

violation of his right to due process. (Doc. 29, pp. 15-18).

Upon review, the Court will deny the motion to dismiss the Fourteenth Amendment

due process claim. The United States Court of Appeals for the Third Circuit has recognized

that "[p]rison disciplinary proceedings may…constitute a denial of due process in the

context of a civil rights action under § 1983 when they are instituted for the sole purpose of

13

retaliating against an inmate for his/her exercise of a constitutional right." *Smith*, 293 F.3d at 653; *see also Bond v. Horne*, 553 F. App'x 219, 224 (3d Cir. 2014) (nonprecedential). "Even if the discipline is initiated in retaliation for a protected act, however, due process is satisfied where the plaintiff has an opportunity to confront and challenge the retaliatory misconduct reports." *Cooper v. Pa. Dep't of Corr.*, 756 F. App'x 130, 135 (3d Cir. 2018) (nonprecedential) (citing *Smith*, 293 F.3d at 653).

Henry asserts that Defendants failed to comply with procedural requirements during the misconduct hearing and subsequent appeals. (Doc. 29, p. 15). Henry may have had the opportunity to confront and challenge the misconduct report through a misconduct hearing and the grievance process. However, at this preliminary stage and given Henry's alleged inability to present certain evidence at his misconduct hearing and alleged exclusion from the second hearing, the parties should be granted an opportunity to develop the record as to this claim. Accordingly, the Court will deny the motion to dismiss as to Henry's Fourteenth Amendment due process claim.

### D.    Redress of Grievances Claim

Henry challenges the DOC policy requiring inmates to attach all relevant documents to grievances and appeals. (Doc. 16, pp. 62-68; Doc. 29, pp. 18-19). He maintains that the DOC already has the original copies, and he should not be required to pay for additional copies. (*Id.*). He also alleges that staff members interfered with his ability to meaningfully petition the government for redress of his grievances. (*Id.* at pp. 68-76).

14

The applicable grievance policy is set forth in Pennsylvania Department of Corrections' Policy Number DC-ADM 804 and its accompanying procedures manual, which outline a three-step grievance process that inmates must follow.[2]  At the first step, the inmate must submit a grievance to the Facility Grievance Coordinator using the DC-804 Part 1 form.  DC-ADM 804, 1-1, § 1.A.5.  The grievance "must include a statement of the facts relevant to the claim" and must provide certain other information.  *Id.* at 1-2, § 1.A.11.  The initial grievance is then reviewed by the Facility Grievance Coordinator (or a designee), who must determine whether it is properly submitted in accordance with the procedure's manual.  *Id.* at 1-6, § 1.C.3.  If the grievance is not properly submitted, the Facility Grievance Coordinator must reject it and return it to the inmate, who may resubmit it.  *Id.* at 1-4, § 1.A.20.; 1-7, § 1.C.4.  If the grievance is properly submitted, it is reviewed by a Grievance Officer, who must provide the inmate with a response.  *Id.* at 1-6 to 1-8, § 1.C.3., 5., 6.

At the second step, the inmate may appeal the initial review response to the Facility Manager, who must decide the appeal and provide a brief statement of the reasons for the decision.  *Id.* at 2-1 to 2-2, § 2.A.  Of particular relevance here, "the inmate should make copies of the *appeal, and* supporting documents, including any facility documents, prior to submission to the Facility Manager for any subsequent appeals."  *Id.* at 2-1, § 2.A.1.f. (emphasis in original).

---

[2]    The Policy is available online at https://www.pa.gov/agencies/cor/about-us/doc-policies.html.

At the third step, the inmate may appeal the Facility Manager's decision to the Secretary's Office of Inmate Grievances and Appeals ("SOIGA"). *Id.* at 2-4 to 2-7, § 2.B.1. After review of the original grievance, the initial review response/rejection, the appeal to the Facility Manager, the Facility Manager's appeal response, any investigative reports and attached exhibits, and the appeal to final review, SOIGA must issue a final decision to the inmate in the case. *Id.* at 2-7, § 2.B.2. A proper appeal to final review must include: (1) a legible copy of the Initial Grievance; (2) a copy of the initial review response/rejection and/or remanded initial review response/rejection; (3) a legible copy of the Inmate Appeal to the Facility Manager; (4) a copy of the Facility Manager/designee's decision and/or remanded Facility Manager/designee's decision; (5) a written appeal to the SOIGA…" *Id.* at 2-6 § 2.B.1.j. "[F]ailure to provide any of the documentation noted above may result in the appeal being dismissed." *Id.* at 2-6 § 2.B.1.j.6.

The Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a), requires "proper exhaustion," *Woodford v. Ngo*, 548 U.S. 81, 92 (2006), which means "complet[ing] the administrative review process in accordance with the applicable procedural rules[,]" *Downey v. Pennsylvania Dep't of Corrections*, 968 F.3d 299, 305 (3d Cir. 2020) (quoting *Woodford*, 548 U.S. at 88).

Henry's claim regarding his disagreement with the procedural requirements of DC-ADM 804 and the purported inadequacies of the grievance system fails. It is well-settled that inmates must comply with DOC deadlines and procedural rules. *See Woodford*, 548

U.S. at 90-91. Additionally, although prisoners have a constitutional right to seek redress of grievances as part of their right of access to courts, this right is not compromised by the failure of prison officials to address these grievances. *Booth v. King*, 346 F.Supp. 2d 751, 761 (E.D. Pa. 2004). This is because inmates do not have a constitutionally protected right to a grievance procedure. *Burnside v. Moser*, 138 F. App'x 414, 415 (3d Cir. 2005) (nonprecedential) (citing *Flick v. Alba*, 932 F.2d 728, 729 (8th Cir.1991)). Nor does the existence of a grievance procedure confer prison inmates with any substantive constitutional rights. *Hoover v. Watson*, 886 F.Supp. 410, 418-419 (D. Del.), *aff'd* 74 F.3d 1226 (3d Cir. 1995). Moreover, "[t]he failure of a prison official to provide a favorable response to an inmate grievance is not a federal constitutional violation." *Okey v. Strebig*, 531 F. App'x 212, 215 (3d Cir. 2013) (nonprecedential) (citing *Flanagan v. Shively*, 783 F.Supp. 922, 931-32 (M.D. Pa. 1992), *aff'd*, 980 F.2d 722 (3d Cir. 1992)). Therefore, "'[i]f the state elects to provide a grievance mechanism, violations of its procedures do not…give rise to a 1983 claim.'" *Hoover*, 886 F.Supp. at 418-19 (quoting *Spencer v. Moore*, 638 F.Supp. 315, 316 (E.D. Mo. 1986)); *see also Heleva v. Kramer,* 214 F. App'x 244, 247 (3d Cir. 2007) (nonprecedential) (finding that prisoners do not have a constitutional right to prison grievance procedures and the "alleged obstruction of such procedures is not independently actionable") (citation omitted).

Henry cannot maintain constitutional claims based upon an inadequate grievance system, that grievances were denied, that he was not provided a hearing upon the filing of a

17

grievance, that his grievances were not addressed, or that staff engaged in tactics to

interfere with the grievance process. *See, e.g.*, *Wilson v. Horn*, 971 F.Supp. 943, 947 (E.D.

Pa. 1997), *aff'd*, 142 F.3d 430 (3d Cir. 1998) (prisoners are not constitutionally entitled to a

grievance procedure and the state creation of such a procedure does not create a liberty

interest requiring procedural protections). Therefore, the Court will dismiss the grievance

issue claims.

      E.    Continuing Violation Doctrine Claim

Henry next raises a claim based on the "continuing violation doctrine." (Doc. 16, pp.

32-24; Doc. 29, pp. 19-21). He maintains that his allegations demonstrate a history of

employment practices in which Defendants continually violated and disregarded their own

policies. (*Id.*).

The violation of a prison policy does not, in itself, state a constitutional infringement.

It is axiomatic that "a prison policy manual does not have the force of law and does not rise

to the level of a regulation" and that "a violation of internal policy does not automatically rise

to the level of a Constitutional violation." *Atwell v. Lavan*, 557 F. Supp. 2d 532, 556 n.24

(M.D. Pa. 2007) (citations omitted); *see Bullard v. Scism*, 449 F. App'x 232, 235 (3d Cir.

2011) (nonprecedential) (explaining that, even if prison officials violated a regulation, such a

violation "is not actionable"); *see also United States v. Jiles*, 658 F.2d 194, 200 (3d Cir.

1981) (noting that even violations of state law will not automatically have a "constitutional

dimension"). Consequently, Defendants cannot be liable simply for violating a prison policy

18

and this claim will be dismissed. *See Estrella v. Hogsten*, 2007 WL 2065879 (M.D. Pa. July

16, 2007) (holding that mere failure of prison officials to follow their own regulations alone is

not a constitutional violation).

###### F.    Cruel and Unusual Punishment Claim

It appears from Henry's averments that he is asserting a claim for cruel and unusual

punishment based on the alleged denial of access to the courts. Defendants move to

dismiss the Eighth Amendment cruel and unusual claim because it sounds in the First

Amendment. (Doc. 23, p. 26). In response, Henry states that he "has misplaced some

case law" and "understand[s] that this claim may get [dismissed] as a result of [his]

negligence." (Doc. 29, pp. 21-22).

The Eighth Amendment's prohibition of cruel and unusual punishment imposes

duties on prison officials to provide prisoners with the basic necessities of life, such as food,

clothing, shelter, sanitation, medical care, and personal safety. *See Farmer v. Brennan*,

511 U.S. 825, 832 (1994); *Helling v. McKinney*, 509 U.S. 25, 31 (1993). To show that

conditions of confinement violate the Eighth Amendment, a plaintiff bears the burden of

proving two requirements: "(1) the deprivation alleged must be, objectively, 'sufficiently

serious,'" resulting in the "denial of 'the minimal civilized measure of life's necessities,'" and

"(2) the 'prison official must have a sufficiently culpable state of mind.'" *Thomas v. Tice*, 948

F.3d 133, 138 (3d Cir. 2020) (quoting *Farmer*, 511 U.S. at 834; *Wilson v. Seiter*, 501 U.S.

294, 299, 302-303 (1991) (cleaned up)); *McClure v. Haste*, 820 F. App'x 125, 128 (3d Cir.

2020) (nonprecedential). Only "extreme deprivations" are sufficient to present a claim for unconstitutional conditions of confinement. *Fantone v. Herbik*, 528 F. App'x 123, 127 (3d Cir. 2013) (nonprecedential) (quoting *Hudson v. McMillian*, 503 U.S. 1, 8-9 (1992)).

To the extent Henry pled an Eighth Amendment claim predicated upon the alleged denial of his access to the courts, such claim is legally deficient. The claim will therefore be dismissed.

### G.    Personal Involvement of Harry, Little, Booher, Houser, Moslak, Burd, and Heist

A defendant in a civil rights action must have personal involvement in the alleged wrongs; liability cannot be predicated solely on the operation of respondeat superior. *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988). "Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence; however, allegations of knowledge and acquiescence must be made with appropriate particularity." *Id.* Additionally, a plaintiff must show that "some affirmative conduct by the supervisor played a role in the discrimination." *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1478 (3d Cir. 1990); *see also Rizzo v. Goode*, 423 U.S. 362, 377 (1976) (supervising officials do not violate the constitutional rights of the victims unless they have played an "affirmative part" in the misconduct).

To state a claim under a theory of knowledge and acquiescence, a plaintiff must allege both contemporaneous knowledge of the alleged wrongdoing and direct supervisory authority over the subordinate actor. *See Robinson v. Pittsburgh*, 120 F.3d 1286, 1293-94

(3d Cir. 1997) *abrogated on other grounds by Burlington Northern & Santa Fe Railway Company. v. White*, 548 U.S. 53 (2006); *Chinchello v. Fenton*, 805 F.2d 126, 133-34 (3d Cir. 1986). In other words, a supervisor has no affirmative duty under § 1983 to take action against an offending subordinate after the fact. *Id.* To be liable under a theory of acquiescence, a supervisor must know that a subordinate is presently violating a prisoner's rights and fail to stop the violation. *Id.*

Furthermore, it is equally settled that involvement in the post-incident grievance process alone does not give rise to Section 1983 liability. *See Dooley v. Wetzel*, 957 F.3d 366, 374 (3d Cir. 2020) (affirming dismissal of claims against prison officials for lack of personal involvement when officials' "only involvement" was "their review and denial of [plaintiff]'s grievance").

To the extent that Henry seeks to hold Defendants Harry, Little, Booher, Houser, Moslak, Burd, and Heist liable as a result of their handling grievances, or appeals of grievances, this claim is not viable. As stated, the "failure of a prison official to provide a favorable response to an inmate grievance is not a federal constitutional violation." *Flanagan*, 783 F. Supp. at 931-32. Thus, insofar as Henry's claims against Defendants Harry, Little, Booher, Houser, Moslak, Burd, and Heist are premised on their involvement in the grievance process, dissatisfaction with responses to grievances and concurrence in the administrative appeal process is not sufficient to establish personal involvement. *See*

*Alexander v. Gennarini*, 144 F. App'x 924 (3d Cir. 2005) (nonprecedential) (concluding that involvement in the post-incident grievance process is not a basis for § 1983 liability).

Henry acknowledges that "[a]lthough none of the[] specific claims involve Harry, Little, Booher, Houser, Moslak, Burd, and Heist, during the actual act; every single one of these defendant[]s was part of, or informed after the fact." (Doc. 29, p. 23). Henry avers that he complained to Defendants Harry, Little, Booher, Houser, Moslak, Burd, and Heist *after* the alleged wrongdoings occurred. (*Id.*). Henry has filed to adequately plead that Defendants Harry, Little, Booher, Houser, Moslak, Burd, and Heist had contemporaneous knowledge of the alleged wrongdoing. The Court will grant Defendants' motion to dismiss based on lack of personal involvement of Harry, Little, Booher, Houser, Moslak, Burd, and Heist.

## IV.    Leave to Amend

When a complaint fails to present a prima facie case of liability, district courts must generally grant leave to amend before dismissing the complaint. *See Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002); *Shane v. Fauver*, 213 F.3d 113, 116-17 (3d Cir. 2000). Specifically, the Third Circuit Court of Appeals has admonished that when a complaint is subject to dismissal for failure to state a claim, courts should liberally grant leave to amend "unless such an amendment would be inequitable or futile." *Phillips*, 515 F.3d at 245 (citing *Alston v. Parker*, 363 F.3d 229, 235 (3d Cir. 2004)). The federal rules allow for liberal amendments in light of the "principle that the purpose of pleading is to

22

facilitate a proper decision on the merits." *Foman v. Davis*, 371 U.S. 178, 182 (1962) (citations and internal quotations omitted).

The Court finds that the following claims are factually and legally flawed: the claims against the DOC, the redress of grievances claim, the continuing violation doctrine claim, the Eighth Amendment claim, and the claims against Harry, Little, Booher, Houser, Moslak, Burd, and Heist. Thus, the Court finds that granting leave to amend these claims would be both futile and inequitable. Moreover, Henry has filed an amended complaint and has failed to remedy the deficiencies of his claims. *See Jones v. Unknown D.O.C. Bus Driver & Transp. Crew*, 944 F.3d 478, 483 (3d Cir. 2019) (where inmate plaintiff "has already had two chances to tell his story…giving him further leave to amend would be futile.").

## V. Conclusion

For the reasons set forth above, Defendants' motion (Doc. 22) to dismiss will be granted in part and denied in part. The Court will grant Defendants' motion to dismiss the claims against the Pennsylvania Department of Corrections, the redress of grievances claim, the continuing violation doctrine claim, and the Eighth Amendment claim. The Court will also grant the motion to dismiss based on lack of personal involvement of Harry, Little, Booher, Houser, Moslak, Burd, and Heist.

The motion will be denied in all other respects.

A separate Order shall issue.

_____
Robert D. Mariani
United States District Judge

Dated: January 23, 2025