IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| PAUL J. HENRY III, | Civil No. 3:24-cv-301 |
| Plaintiff | (Judge Mariani) |
| v. | |
| PENNSYLVANIA DEPARTMENT OF CORRECTIONS, *et al.*, | |
| Defendants | |

**MEMORANDUM**

Plaintiff Paul Henry ("Henry"), an inmate housed at the State Correctional Institution, Benner Township, Pennsylvania ("SCI-Benner Township"), initiated this civil rights action pursuant to 42 U.S.C. § 1983. (Doc. 1). The matter is proceeding via an amended complaint and supplement thereto. (Docs. 16, 55).

Presently before the Court is Henry's motion to compel discovery. (Doc. 57). For the reasons set forth below, the motion will be granted in part and denied in part.

**I.   Factual Background**[1]

The gravamen of Henry's amended complaint is that staff members rejected and confiscated a box of his legal mail, which purportedly tested positive for synthetic

---

[1] For purposes of this Memorandum, the Court only includes the allegations of the second amended complaint and does not include the allegations of the supplemental complaint. Thus far, the only parties that have engaged in discovery are Henry and the Defendants listed in the second amended complaint. The newly named Defendants in the supplemental complaint have not yet been involved in the discovery process.

cannabinoids, but also contained photographs relevant to his criminal conviction, which he needed for the appeal of his state court sentence. He thus alleges that Defendants interfered with his First Amendment right of access to the courts. The amended complaint also sets forth several claims associated with his denial of access to the courts claim; namely, that Defendants violated his Fourteenth Amendment right to due process and Eighth Amendment right to be free of cruel and unusual punishment, and that Defendants engaged in improper employment practices and denied him the ability to pursue the redress of grievances. The allegations are as follows.

On February 16, 2022, Henry alleges that his criminal defense attorney mailed him two boxes of evidence pertaining to his criminal trial. (Doc. 16, p. 16 ¶ 1). When the mail arrived at the facility, Henry alleges that Defendant Boone, the SCI-Rockview mailroom supervisor, accepted one box and rejected the other box.[2] (*Id.* at p. 16 ¶¶ 2-3). On March 1, 2022, Henry filed Grievance Number 970370 contesting the rejection of the second box for failure to provide him a reason for the rejection. (*Id.* at p. 17 ¶ 5). Defendant Boone allegedly responded that the box was rejected because the attorney control number on each box was different. (*Id.*). Defendant Boone did not provide a reason for his purported failure to provide Henry with notice of the rejection. (*Id.*). Henry asserts that he has photographs of the boxes before they were sent, showing that they have the same attorney control

---

[2] Henry asserts that SCI-Benner Township does not have its own mailroom, and all inmate mail is sent to the SCI-Rockview mailroom before being transferred to inmates at SCI-Benner Township. (Doc. 26, p. 6).

2

number. (*Id.*). Henry thus alleges that Defendant Boone lied about the rejection reason. (*Id.*).

Henry asserts that his criminal defense attorney resent the rejected box to SCI-Benner Township. (*Id.* at p. 16 ¶ 4). On March 3, 2022, Henry was called to the legal mailroom to accept the second box. (*Id.* at pp. 17-18 ¶ 6). When Henry arrived at the mailroom, he discovered that the box was already opened, and he was informed that security tested the box, and it tested positive for synthetic cannabinoids. (*Id.*). The box was confiscated, and Henry was issued a confiscated items receipt. (*Id.*). On March 10, 2022, Defendant Kauffman issued misconduct number D692616 against Henry charging him with possession of a dangerous or controlled substance and unauthorized use of the mail, and Henry was placed in the restricted housing unit ("RHU"). (*Id.* at p. 18 ¶ 7; *Id.* at p. 20 ¶¶ 1-2). A misconduct hearing convened on March 15, 2022, before Defendant-Hearing Examiner Schneck. (*Id.* at p. 21 ¶ 2). Defendant Schneck dismissed the charges against Henry without prejudice. (*Id.*). Defendant Schneck purportedly found "no evidence" of Henry's guilt after reading Kauffman's report and weighing the evidence. (*Id.*).

On March 15, 2022, Defendant Kauffman allegedly resubmitted the misconduct, designated as number D693631, setting forth the same charges against Henry. (*Id.* at p. 20 ¶ 3). Defendant Kauffman attached a report indicating that the Security Processing Center performed testing that confirmed the presence of synthetic cannabinoids and that the box was sent to the Bureau of Investigations and Intelligence for further testing. (*Id.*). Henry

3

asserts that after Kauffman resubmitted the second, similar misconduct on March 15, 2022, Schneck held an *ex parte* hearing on March 16, 2022. (*Id.* at p. 21 ¶ 3; *Id.* at p. 22 ¶ 4). During this *ex parte* hearing, Defendant Kauffman allegedly testified about a phone call between Henry and his mother. (*Id.*). During that phone call, Henry's mother allegedly said she knew "that [the box] was fully loaded with pages[,]"—slang used for the introduction of drugs into institutions. (*Id.*). Henry maintains his innocence and alleges that Defendant Kauffman lied about the context of this phone call. (*Id.* at p. 23 ¶ 4(b)). Defendant Schneck ultimately found Henry guilty of the misconduct. (*Id.* at p. 25 ¶ 5). Henry claims that Defendant Schneck denied him due process, including the right to present video evidence and witnesses, and the right to confront adverse witnesses. (*Id.*). Henry appealed Schneck's decision to the Program Review Committee ("PRC"), which consisted of Defendants, Booher, Grice, and Williamson. (*Id.* at p. 25 ¶ 5(c)(1)). The PRC upheld Schneck's decision, citing that Henry's witnesses were improper. (*Id.*). Henry asserts that the PRC failed to address his request for video footage of the mailroom. (*Id.*). Henry then appealed to the Superintendent, Defendant Houser, who upheld the PRC's decision. (*Id.* at pp. 25-26 ¶ (c)(2)). He next appealed to the Chief Hearing Examiner, Defendant Moslak, who upheld the prior decisions. (*Id.* p. 26 ¶ 3; *Id.* at p. 27).

In his next claim, Henry alleges that Defendants Williamson, Grice, Ramirez, Bingman-Forshey, Quist, and Burd denied him access to the courts. (*Id.* at p. 32). Henry states that he was placed in the RHU for 75 days—from March 10, 2022 through May, 24,

4

2022. (*Id.* at p. 33 ¶ 2(a)). During this time, he claims that Defendant Williamson denied him access to his legal property when Williams stated that he was only allowed one box of legal materials in his cell. (*Id.*). Henry also claims that Williamson did not allow him to make copies of exhibits that he intended to file with his legal brief, stating that there were too many pages to be copied. (*Id.* at p. 34 ¶ 3). Henry then asked Defendant Grice to make copies of the exhibits and informed him that he had an upcoming court-ordered deadline. (*Id.*). Defendant Grice allegedly told Henry that he could not make the copies due to the number of pages, and that the courts would be flexible with deadlines. (*Id.*). Henry also asserts that Defendants Ramirez and Bingman-Forshey would not allow him to make copies with a cash slip but required him to provide a "Venda-copy card." (*Id.* at p. 35 ¶ (3)(c)). Henry maintains that he was not allowed to have his "Venda-copy card" on his person while in the RHU; it was stored with his legal property. (*Id.*). Henry further alleges that Defendants Quist and Burd failed to respond to requests he had made while in the RHU for extension of deadlines and requests for the status of outstanding grievances. (*Id.* at p. 35).

Henry next alleges that the DOC, Kauffman, Bookheimer, Little, Harry, Booher, and House denied him access to the courts by confiscating the second box of legal mail, which he claims was vital to his Post-Conviction Relief Act ("PCRA") petition challenging his conviction and sentence. (*Id.* at pp. 39-40). Henry asserts that he made multiple requests to Kauffman and Bookheimer, demanding the return of the photographs contained in the

5

box, or copies thereof, but never received a response. (*Id.* at p. 40 ¶ 2). Henry also avers that he wrote to then-Secretary Little and Secretary Harry, requesting the return of the photographs or copies thereof. (*Id.* at pp. 41-42). He claims neither responded. (*Id.*)

Henry maintains that he has been harmed as a result of the DOC's employment practices. (*Id.* at p. 47). He lodges this claim against the DOC, Little, Harry, Booher, Houser, Boone, Ramirez, and Heist. (*Id.*). In describing this claim, Henry alleges that he first lost his legal mail at SCI-Camp Hill in June of 2021. (*Id.* at p. 49). Because this mail was allegedly lost, Henry's criminal attorney attempted to remail the evidence in the two boxes he sent to SCI-Rockview. (*Id.* at p. 51). Henry also claims that Boone previously rejected his mail without notifying him of the rejections. (*Id.* at pp. 49-54). From June 2021 to October 2023, Henry asserts that he either lost mail or mail had been improperly confiscated. (*Id.* at pp. 54-58). He also asserts that Defendant Ramirez improperly removed an envelope from the law library containing a portion of his PCRA petition. (*Id.* at pp. 58-59). Henry alleges that Ramirez then lost the envelope containing part of his PCRA petition. (*Id.* at p. 59).

Henry next brings a claim against the DOC, Quist, Burd, Grice, Houser, Booher, Williamson, Heist, Ramirez, and Boone, alleging that the prison grievance system itself interferes with his right to seek redress of grievances. (*Id.* at pp. 62-63). He asserts that he had several grievances pending when he was placed in the RHU and the security department confiscated these grievances. (*Id.* at pp. 63, 82). Henry believes that he should

6

not be required to pay for copies of all prior grievances and appeals at each level to exhaust his administrative relief, and that he should not have to provide copies of supporting documentation. (*Id.* at pp. 63-68). In support, he avers that the Department of Corrections ("DOC") already has the originals and is engaging in extortion by requiring inmates to pay for extra copies. (*Id.*). He also accuses the DOC of encouraging staff to interfere with grievances by lying, avoiding filing a response, providing illegible signatures to avoid providing staff names, and delaying grievances in order to deny them as untimely. (*Id.* at pp. 68-76). Henry also asserts that Defendants Quist, Grice, Bookheimer, and Williamson intimidate and threaten grievance filers. (*Id.* at pp. 77-80).

Finally, Henry brings a cruel and unusual punishment claim against the DOC, Boone, Booher, Quist, Harry, Ramirez, Bingman-Forshey, Grice, and Bookheimer, asserting they denied him access to courts by interfering with his legal mail and using Smart Communications to delay his mail. (*Id.* at pp. 82-86). He also asserts that he has lost legal mail and has been denied access to stored legal property. (*Id.* at pp. 86-89). He complains of lack of access to the law library and lack of refunds for printing costs. (*Id.* at pp. 90-91).

## II. **Legal Standard**

A party who has received evasive or incomplete discovery responses may seek a court order compelling disclosures or discovery of the materials sought. FED. R. CIV P. 37(a). The moving party must demonstrate the relevance of the information sought to a particular claim or defense. The burden then shifts to the opposing party, who must

demonstrate in specific terms why a discovery request does not fall within the broad scope of discovery or is otherwise privileged or improper. *Goodman v. Wagner*, 553 F. Supp. 255, 258 (E.D. Pa. 1982).

Generally, courts afford considerable latitude in discovery in order to ensure that litigation proceeds with "the fullest possible knowledge of the issues and facts before trial." *Hickman v. Taylor*, 329 U.S. 495, 501 (1947). Federal Rule of Civil Procedure 26(b)(1) provides that a party "may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case… Information within this scope of discovery need not be admissible in evidence to be discoverable." FED. R. CIV. P. 26(b)(1). "[A]ll relevant material is discoverable unless an applicable evidentiary privilege is asserted. The presumption that such matter is discoverable, however, is defeasible." *Pearson v. Miller*, 211 F.3d 57, 65 (3d Cir. 2000). Furthermore, the court may limit discovery if the discovery sought is unreasonably cumulative, duplicative, or readily obtainable from some other source, the party seeking discovery has had ample opportunity to obtain the information through discovery, or the proposed discovery is outside the scope permitted by Rule 26(b)(1). FED. R. CIV. P. 26(b)(2)(C).

### III. Discussion

In the instant motion to compel, Henry challenges Defendants' responses to his discovery requests. (Docs. 57, 58). Specifically, Henry takes issue with Defendants'

following discovery responses: (1) failing to preserve video footage "proving" that Henry's legal mailbox #2 was already opened outside his presence on March 3, 2022; (2) withholding the names of individuals likely to have discoverable information; (3) denying Henry the opportunity to properly inspect audio/phone recordings; and (4) failing to make full disclosures and cooperate with the discovery process in general. (Doc. 58). The Court will address each challenge in turn.

A.   Request for Video Footage

Henry seeks an order to compel Defendants to show him video footage "proving" that Henry's legal mailbox #2 was already opened outside his presence on March 3, 2022. (Doc. 58, at 5, 8-9). Henry requested this video footage in his first request for production of documents. (Doc. 59-3, at 5 ¶ 1). In response to this request, Defendants responded that they "are not in possession of any such videos from 3/3/22. The Pennsylvania Department of Corrections only keeps video footage for 30 days, unless otherwise requested to preserve." (*Id.*).

In Defendants' response to the instant motion to compel, Defendants again assert that the video footage does not exist. (Doc. 64, at 7-8). Henry argues that Defendants acted in bad faith by failing to preserve the video footage, despite his requests to view the video. (Doc. 58, at 9). The Court finds that Henry has failed to substantiate his claim that Defendants have acted in bad faith, and the Court credits Defendants' representation that

the video evidence does not exist because it was recycled in the ordinary course of business.

The Court is unable to compel the Defendants to produce evidence that does not exist. And the Court is unable to compel the creation of evidence by parties who attest that they do not possess the materials sought. Accordingly, the Court will deny the motion to compel to the extent that Henry requests an order directing Defendants to produce video for March 3, 2022. That being said, Defendants are directed to file a sworn affidavit or declaration on the docket attesting to the steps taken to verify that the requested video does not exist.

### B.     Request for Names of Individuals with Discoverable Information

Henry next asserts that Defendants withheld the names of individuals likely to have discoverable information by providing redacted documents. (Doc. 58, at 3 ¶ 19). He claims that Defendants provided documents that "had pertinent information 'CUT OFF.'" (*Id.*). In response, Defendants indicate that, in those documents, they redacted the names of DOC staff members for their safety and to protect Henry's "personally identifying information (PII)". (Doc. 64, at 7; *see also* Doc. 59-12, at 31 ¶¶ 3-4). Defendants indicate further that they resent the documents that Henry identified as having had portions "cut off" and sent them in the format in which Defendants possessed them. (*Id.*). The Court will accept the representation of defense counsel that Henry was resent the sought documents in corrected

form. Therefore, the Court will grant this request. In the event that Henry has not received the new documents, he may file a motion for sanctions.

C. <u>Request for Audio Recordings</u>

Henry seeks an order to compel Defendants to allow him to properly review audio/phone recordings. (Doc. 58, at 5-7, 9-11). Henry admits that he was able to review the phone recordings but argues that he was not able to take notes or ask the security captain to replay the information. (*Id.* at 9-11). In response, Defendants assert that they "already reaffirmed their willingness to facilitate Plaintiff's review of the calls." (Doc. 64, at 7). The Court will accept the representation of defense counsel that Henry will be provided another opportunity to review the relevant phone recordings. Therefore, the Court will grant this request. In the event that Henry is not afforded the opportunity to review the relevant audio/phone recordings, he may file a motion for sanctions.

D. <u>General Request for Full Cooperation in Discovery</u>

Henry also takes issue with Defendants' overall responses to his discovery requests and asserts that they have not made full disclosures or cooperated in the discovery process. (Doc. 58, at 6). He maintains that Defendants have not abided by the Federal Rules of Civil Procedure because they have not responded to discovery requests in the 30 days to do so contemplated by the Rules. (Doc. 57 ¶ 5; Doc. 58, at 7-8).

The record before the Court evinces that the parties have engaged in significant discovery and Defendants have provided responses to Heney's requests. (*See* Doc. 59-2;

11

Doc. 59-3 at 4-10; Doc. 59-4; Doc. 59-5; Doc. 59-6; Doc. 59-7; Doc. 59-12, at 3-4, 30-33; Docs. 64-1 through 64-8). Henry has not demonstrated that Defendants are acting in bad faith and are willfully disregarding discovery deadlines and orders. Therefore, any request that Defendants be ordered to comply with the discovery process will be denied.

## IV.  Conclusion

Consistent with the foregoing, the Court will grant in part and deny in part Henry's motion to compel. (Doc. 57). A separate Order shall issue.

                                                    _____
                                                    Robert D. Mariani
                                                    United States District Judge

Dated: January 9, 2026